| | |
|---|---|
| 1 | THEODORE J. BOUTROUS JR., SBN 132099 |
|   |   tboutrous@gibsondunn.com |
| 2 | THEANE EVANGELIS, SBN 243570 |
|   |   tevangelis@gibsondunn.com |
| 3 | KATHERINE V.A. SMITH, SBN 247866 |
|   |   ksmith@gibsondunn.com |
| 4 | BRADLEY J. HAMBURGER, SBN 266916 |
|   |   bhamburger@gibsondunn.com |
| 5 | GIBSON, DUNN & CRUTCHER LLP |
|   | 333 South Grand Avenue |
| 6 | Los Angeles, CA  90071-3197 |
|   | Telephone: 213.229.7000 |
| 7 | Facsimile:   213.229.7520 |

Attorneys for Defendants ABM ONSITE SERVICES – WEST, INC. (now known as ABM INDUSTRY GROUPS, LLC); ABM SERVICES, INC. (now known as ABM INDUSTRY GROUPS, LLC); ABM JANITORIAL SERVICES – NORTHERN CALIFORNIA (now known as ABM INDUSTRY GROUPS, LLC); and ABM JANITORIAL SERVICES – SOUTHWEST, INC. (now known as ABM INDUSTRY GROUPS, LLC)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARLEY CASTRO and LUCIA MARMOLEJO, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ABM INDUSTRIES, INC.; ABM ONSITE SERVICES – WEST, INC.; ABM SERVICES, INC.; ABM JANITORIAL SERVICES – NORTHERN CALIFORNIA, INC.; and ABM JANITORIAL SERVICES, INC.,<br><br>        Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL OF ACTION BY DEFENDANTS ABM ONSITE SERVICES – WEST, INC., ABM SERVICES, INC., ABM JANITORIAL SERVICES – NORTHERN CALIFORNIA, AND ABM JANITORIAL SERVICES – SOUTHWEST, INC.** |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION AND TO PLAINTIFFS MARLEY CASTRO AND LUCIA MARMOLEJO AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT,** pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711, Defendants ABM ONSITE SERVICES – WEST, INC., ABM SERVICES, INC., ABM JANITORIAL SERVICES – NORTHERN CALIFORNIA, and ABM JANITORIAL SERVICES – SOUTHWEST, INC. (collectively "Defendants" or "ABM") hereby remove to the United States District Court for the Northern District of California, Oakland Division, the above-captioned state court action, originally filed as Case No. RG14745764 in Alameda County Superior Court in the State of California. Removal is proper for the reasons explained below.

## TIMELINESS OF REMOVAL

1. Plaintiffs have twice successfully moved to remand this action to state court on the basis that the amount-in-controversy does not exceed $5 million. *See* Case No. 14-CV-05359 ("First Removal Docket"), Dkt. 25 ("Plaintiff's First Motion to Remand"); Case No. 4:15-cv-01947 ("Second Removal Docket"), Dkt. 31 ("Plaintiffs' Second Motion to Remand"). In moving to remand Plaintiffs challenged only that the amount-in-controversy does not exceed $5 million, and have never argued that Defendants are unable to meet the other requirements for removal under the Class Actions Fairness Act. Declaration of Katherine V. A. Smith ("Smith Decl.") ¶ 65.

2. On April 28, 2017, however, Plaintiffs filed a motion for class certification, along with a trial plan and an expert declaration, that demonstrate that the amount-in-controversy in this action greatly exceeds $5 million. The filing of those papers and evidence constitute a change in circumstance permitting the removal of this action at this stage.

3. Specifically, Plaintiffs now assert that "[f]or each month in which a Class Member used her personal cellular phone for a reimbursable expense at least once, she will be owed damages equal to the minimum available cost of a cell phone in California during the month that the violation occurred." Smith Decl., ¶ 45, Ex. 45 at 6 (Plaintiffs' Proposed Trial Plan In Support of Motion for Class Certification ("Trial Plan")). Plaintiffs' expert declared that there were 15,477 employees who

fell within Plaintiffs' proposed class definition.[1]  Smith Decl., Ex. 44 ¶ 7 (Declaration of David M. Breshears CPA/CFF in Support of Plaintiffs' Motion for Class Certification ("Expert Decl.")).  In addition, during the relevant time period the lowest available monthly cost of a cell phone, according to Plaintiffs' expert was $27.14.  *See* Smith Decl. ¶ 66; Expert Decl. ¶ 20.   Plaintiffs thus seek as damages for each putative class member of $27.14 per month for any month in which a class member used his or her personal cell phone for a reimbursable expense at least once.

4. Based on the evidence provided by Plaintiffs' expert and the expert's estimated number of class members, under Plaintiffs' trial plan, to calculate damages each class member would need to have only incurred a reimbursable personal cell phone expense in twelve distinct months during the alleged seven year class period for the amount-in-controversy to exceed $5 million (12 x $27.14 x 15,447= $5,030,778.96).  *See* Smith Decl. ¶ 67;  *Id.* ¶ 2, Ex. 1 at 2 (Second Amended Complaint ("SAC")) (alleging a class period of "any time during the period beginning four years prior to the filing of the original complaint through the date of notice to the Class Members that a class has been certified").  Yet Plaintiffs have alleged that "Defendants regularly require Plaintiffs and Class Members to use their personal cell phones" and that Defendants "regularly call or text message" (SAC ¶ 23), which demonstrates that the amount in controversy is actually significantly higher than $5 million.

5. Defendants' removal is timely because less than 30 days have passed since Defendants' April 28, 2017 receipt of Plaintiffs' class certification motion, trial plan and expert declaration, which directly contradict Plaintiffs' prior assertions that the amount in controversy does not exceed $5 million and therefore constitute a  "motion . . . or other paper from which it may be first ascertained that the case . . . has become removable." 28 U.S.C. § 1446(b)(3); *see, e.g.*, *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (holding that the time to remove did not begin to run until the point at which "[Plaintiff] specified in her answers to Nationstar's interrogatories that the total amount in controversy exceeded $25 million" and "the case became

---

[1]  Plaintiffs' expert evaluated information from 2014 through 2016.  Smith Decl. ¶ 66.  The class period is from October 24, 2010 through present.  *Id*. ¶ 60.

removable under CAFA."); *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 70 (1st Cir. 2014) (stating that defendant timely removed an action for the second time after plaintiff provided information on how to calculate damages); *In re Citizens Auto. Fin.*, No. C 10-05345 JSW, 2011 WL 724778, at *5 (N.D. Cal. Feb. 22, 2011) (denying plaintiffs' motion to remand and finding that an "email qualifies as 'other paper from which it may first be ascertained that the case is one which is or has become removable.'"); *Cram v. Elec. Data Sys. Corp.*, No. 07-1842, 2007 WL 4555888, at *1 (S.D. Cal. Dec. 19, 2007) (interrogatory responses sufficient to establish amount-in-controversy requirement for removal); *Avans v. Foster Wheeler Const. Co.*, No. 1:10-CV-00922 LJO, 2010 WL 3153972, at *7 (E.D. Cal. Aug. 6, 2010).

6. Removal is also timely because, while Plaintiffs previously argued that the twenty percent reimbursement rate of monthly cell phone expenditures proposed by ABM was "speculative and self-serving" (Plaintiff's First Motion to Remand, Dkt. 25 at 6), Plaintiffs have now demonstrated their intent to seek a 100% reimbursement of the minimum available cost of a cell phone in California. They have also filed an expert declaration in support of a reimbursement figure of $27.14 per putative class member for each month where a reimbursable expense was incurred. Plaintiffs' altered position regarding damages creates a "relevant change of circumstances" which triggers a new time period for removal. *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1188 (9th Cir. 2015) (permitting a second removal where a class certification order "altered the circumstances bearing on jurisdiction by expanding the amount in controversy").

7. In addition, on May 3, 2017, the Court approved a joint stipulation to allow Plaintiffs to file a Second Amended Complaint ("SAC"). Smith Decl. ¶ 52, Ex. 51. Plaintiffs' SAC altered the class definition from including all ABM janitorial employees to a class of cleaners. *Compare* Plaintiffs' First Removal, Dkt. 21 ¶ 2 (First Amended Complaint), *with* SAC ¶ 2.

## GROUNDS FOR REMOVAL

8. Defendants are authorized to remove this action to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711 ("CAFA") because the amount in controversy exceeds $5 million, Plaintiffs bring this action as a putative class action, and they have

named Defendants who are all citizens of states different from that of Plaintiffs and the putative class members.

A.    **Plaintiffs Bring This Case As A Class Action Against Defendants**

9.    Plaintiffs "seek to represent" a class of "all California residents who worked for Defendants in the State of California" "who had the Employee Master Job Code Description code Cleaner, and who were paid on an hourly basis." SAC ¶ 2. Plaintiffs also seek to represent two subclasses of employees with the job description code of Cleaner. SAC ¶ 3. For the First and Second Causes of Action, "Plaintiffs bring this lawsuit as a class action . . . on behalf of themselves and all similarly situated janitorial employees."[2] SAC ¶ 26.

10.   Defendants deny any liability in this case, both as to Plaintiffs' individual claims and as to the class claims, and will present compelling defenses to these claims on the merits. Defendants also intend to oppose class certification because class treatment is inappropriate under these circumstances. Defendants expressly reserve all rights in this regard. For purposes of the jurisdictional requirements for removal only, however, Defendants note that, as set forth in more detail below, the allegations in the SAC identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6).

B.    **There Are More Than 100 Members In The Proposed Classes**

11.   This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) if, in addition to the other requirements of § 1332(d), the action involves a putative class of at least 100 persons. Plaintiffs expressly allege that "at least 15,000 hourly Cleaners have been employed by Defendants." SAC ¶ 20.

12.   As of May 19, 2017, ABM's records reflect that there are at least 29,413 individuals who may fall within Plaintiffs' proposed class definition. Declaration of Nedy Warren ("Warren Decl.") ¶ 8.

---

[2]  Plaintiffs allege that their Third Cause of Action under The Private Attorneys General Act ("PAGA") is not brought as a class action. SAC ¶ 26. Defendants deny this and expressly reserve their rights to contest whether Plaintiffs must meet the requirements of Rule 23 in order to maintain a PAGA action.

13. Although Defendants deny that class treatment is appropriate, there can be no question that, should Plaintiffs' proposed class be certified, it would consist of far more than 100 members.

**C.  Defendants Are Citizens Of Different States Than Plaintiffs And The Putative Class Members**

14. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) if, in addition to the other requirements of § 1332(d), a member of the class is a citizen of a state different from any defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

15. Plaintiff Marley Castro "is a resident of Oakland, California in Alameda County." SAC ¶ 11.  As such, Plaintiff Castro is a citizen of California.

16. Plaintiff Lucia Marmolejo "is a resident of San Lorenzo, California in Alameda County."  SAC ¶ 12.  As such, Plaintiff Marmolejo is a citizen of California.

17. A corporation is a citizen of its state of incorporation and the state of its principal place of business.  28 U.S.C. § 1332(c)(1).  ABM Onsite Services – West, Inc., ABM Services, Inc., ABM Janitorial Services – Northern California and ABM Janitorial Services – Southwest, Inc. no longer exist.  Warren Decl. ¶¶ 3-6.  After a series of mergers and asset transfers over the years, ABM Industry Groups, LLC is the only surviving ABM entity which employs cleaners in California.  *See id.*

18. A limited liability corporation is a citizen of every state of which its owners are citizens.  *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). ABM Industry Groups, LLC is a wholly owned subsidiary of ABM Industries Incorporated ("ABM Industries).  Warren Decl. ¶ 7.  ABM Industries is incorporated in Delaware.  *Id.* ¶ 2.  ABM Industries maintains its corporate headquarters in New York, New York.  *Id.*  ABM Industries' executive and administrative operations are centrally managed from this location.  *Id.*  ABM Industries "principal place of business," which the Supreme Court has interpreted to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities" is in New York.  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010); *see also* 28 U.S.C. § 1332(c)(1).  ABM Industries is a citizen of Delaware and New York.  *See* 28 U.S.C. § 1332(c)(1).  Thus, ABM Industry Groups, LLC is also a citizen of Delaware and New York.  *See Columbia Properties Anchorage, LP*,

1   437 F.3d at 899.  Thus, ABM Industry Groups, LLC is a citizen of Delaware and New York[3]—not
2   California, and there is accordingly minimal jurisdiction diversity as required by CAFA.  *See* 28
3   U.S.C. § 1332(d)(2)(A); *Hertz*, 130 S. Ct. at 1192; *Carijano v. Occidental Petroleum Corp.*, 643 F.3d
4   1216, 1230 n.2 (9th Cir. 2011).

**D.   The Amount In Controversy Exceeds $5 Million**

19.   This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) if, in addition to the other requirements of § 1332(d), the amount in controversy exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).

20.   "Plaintiffs seek to represent all California residents who worked for Defendants with the Employee Master Job Code Description code Cleaner, and were paid on an hourly basis in the State of California at any time during the Class Period."  SAC ¶ 27.  Plaintiffs allege that Defendants have "systematically failed to reimburse employees for out-of-pocket expenses for work-related use of their personal cell phones."  SAC ¶ 22.  They further allege that "Defendants regularly require Plaintiffs and Class Members to use their personal cell phones in discharging their duties" and that "Defendants regularly call or text message Plaintiffs and Class Members with work-related communications and require that Plaintiff and Class Members respond to those communications."  SAC ¶ 23.  In addition, Plaintiffs claim that "Defendants require that Plaintiffs and Class Members who work at locations without time clock systems use their personal cell phones to clock in and out of their shifts, breaks, and meal periods."  SAC ¶ 25.  Plaintiffs allege that every putative class member is owed "reimbursement of business expenses, interest thereon, and a reasonable attorneys' fees and costs" along with "equitable and injunctive relief" and "civil penalties."  SAC ¶¶ 6-7.

---

[3]   ABM Industry Groups, LLC is organized under Delaware law.  Warren Decl. ¶ 7.  In addition, It maintains its headquarters in Houston, Texas.  ABM Industry Groups, LLC's "principal place of business," which the Supreme Court has interpreted to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities" is in Texas.  *Hertz*, 130 S. Ct. at 1192; *see also* 28 U.S.C. § 1332(c)(1).  The corporate offices at this location and other offices in Houston, Texas are considered to be ABM Industry Groups, LLC's principal place of business and house its major corporate operations, including, but not limited to, its executive corporate management.  *Id.*

21. Defendants deny that any such reimbursements are owed to Plaintiffs or putative class members. But for purposes of this jurisdictional analysis *only*, Defendants rely on Plaintiffs' allegation that the reimbursements are owed. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("In determining the amount in controversy, courts first look to the complaint."); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) ("In determining the amount [in controversy], we first look to the complaint."); *Heejin Lim v. Helio, LLC*, No. CV 11-9183 PSG, 2012 WL 359304, at *2 (C.D. Cal. Feb. 2, 2012) ("The ultimate inquiry is, therefore, what amount is put 'in controversy' by the plaintiff's complaint or other papers, not what the defendant will actually owe for the actual number of violations that occurred, if any.") (citations and quotations omitted).

22. California Labor Code section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequences of the discharge of his or her duties, or of his or her obedience to the directions of the employer." Cal. Lab. Code § 2802(a). For this provision, "the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to attorney's fees incurred by the employee enforcing the rights granted by this section." *Id.* § 2802(c).

    **I.**    **Plaintiffs' Trial Plan, Expert Testimony, and Proposed Method of Calculating Damages Puts Over $17 Million in Controversy.**

23. Plaintiffs have proposed calculating damages through the following approach: "[f]or each month in which a Class Member used her personal cellular phone for a reimbursable expense at least once, she will be owed damages equal to the minimum available cost of a cell phone in California during the month that the violation occurred." Trial Plan at 6. Further, Plaintiffs have claimed that a reimbursable expense is incurred if any call is placed to a Class Member's personal cell phone "whether or not the Class Member answered the call, listened to a message, returned the call or noted that a Supervisor or Lead had attempted to contact them." *Id.* at 5 n.4. Thus, Plaintiffs have claimed that a putative class member should be reimbursed for the minimum available cost of a cell phone in California if even a single call is placed or a single text is sent by ABM to a putative

1  class member's personal cell phone in that month.[4]

2  24.  The lowest available cost of a cell phone noted in the expert declaration is $27.14.
Smith Decl. ¶ 66; *see* Expert Decl. ¶ 20.

25.  Since October 24, 2010 through May 19, 2017, 29,413 ABM employees in California have the job title of cleaner, i.e., would be members of the putative class.  Warren Decl. ¶ 8.  A total of 627,908 months were worked by these cleaners, i.e., members of the putative class.  *Id*. ¶ 9.

26.  As Plaintiffs allege that Defendants "regularly" contacted putative class members and "systematically failed to reimburse employees" (SAC ¶¶ 22-23), and that a single phone call or text is sufficient contact to result in a reimbursable expense equal to the minimum available cost of a cell phone in California for each month in which such an expense was incurred  (Trial Plan at 5 n. 4), it is reasonable to assume for the purposes of calculating the amount in controversy that the putative class members incurred a reimbursable expense every month worked in the class period.[5]  *See, e.g.*, *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (reversing the district court's decision to remand where defendants estimated damages based on the assumption that every putative class member was owed reimbursement); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (denying plaintiff's motion to remand where defendants' "calculation of the amount in controversy relie[d] on assumed rates of violation" and the "rates are sufficiently supported by [plaintiff's] allegations and Defendants' evidence"); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCX, 2015 WL 2452755, at *4

---

[4] Plaintiffs cannot disavow their stated method of calculating damages because Plaintiffs have voluntarily submitted this trial plan and they should be held "responsible for what they have said and done." *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1223 (9th Cir. 2014) (finding removal was proper after plaintiffs sought to coordinate a trial of over 100 plaintiffs and stating that plaintiffs had voluntarily asked for coordination and submitted memoranda).

[5] To the extent Plaintiffs contest the rate of violations, Plaintiffs cannot artificially limit the amount in controversy or disavow collection of part of the damages on behalf of putative absent class members.  *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2012).  Further, Plaintiffs did not previously contest Defendants' assumption that a reimbursable expense was incurred during every month worked by a putative class member.  *See, e.g.*, Plaintiff's First Motion to Remand, Dkt. 25; Plaintiffs' Second Motion to Remand, Dkt. 31; First Removal Docket, Dkt. 31, Second Removal Docket, Dkt. 33.

(C.D. Cal. May 21, 2015) (approving of an assumed 100% violation rate where plaintiff alleged defendant maintained uniform policies and practices and procedures).

27. The assumption that putative class members incur a reimbursable expense every month is also reasonable because the Named Plaintiffs themselves claim to have incurred reimbursable expenses throughout their employment and have also alleged that their claims are typical of the class. SAC ¶ 28(c). Specifically, the Named Plaintiffs have attested that "during the entire time" that they worked for ABM as a cleaner, they used their "personal cell phone for work purposes." Smith Decl. ¶ 42, Ex. 41 ("Castro Decl.") ¶ 4; Smith Decl. ¶ 43, Ex. 42 ("Marmolejo Decl.") ¶ 4. They also stated that their "foreman and supervisors would call [their] personal cell phone[s] regularly for work purposes." Castro Decl. ¶ 7; Marmolejo Decl. ¶ 7.

28. If, as Plaintiffs allege, such use of their personal cell phones constitutes a necessary expenditure or loss under California Labor Code section 2802, all cleaners within the relevant time period incurred such necessary expenditures, the amount in controversy with respect to this claim would be greater than **$17 million**, calculated as shown in the chart below.[6]

| **Amount of Reimbursement Claims in Controversy** <br> (October 24, 2010 through May 19, 2017) | |
|---|---:|
| Monthly Reimbursement Rate | $27.14 |
| Aggregate Number of Months Worked by Putative Class Members | 627,908 |
| Minimum amount in controversy for Defendants ($27.14 average semi-monthly reimbursement x 627,908 months worked) | **$17,041,423.12** |

---

[6] Defendants reserve the right to "challenge the actual amount of damages in subsequent proceedings and at trial." *Ibarra*, 775 F.3d at 1198 n.1.

**II.    Plaintiffs' Request for Attorneys' Fees Places an Additional $4.3 Million in Controversy**

29.     In addition, Plaintiffs request "[a]n award to Plaintiffs and the Class Members of reasonable attorneys' fees and costs, pursuant to Code of Civil Procedure § 1021.5 and Labor Code § 2802, and any other applicable law."  SAC, Prayer for Relief ¶ h.

30.     Plaintiffs claim to have "vigorously litigated" the case including "opposing Defendants' two removals to federal court and related appeals; propounding discovery to Defendants; reviewing Defendants' document production; meeting with Defendants regarding discovery and case management; preparation for depositions of Defendants' Person Most Knowledgeable; working with Plaintiffs' expert to analyze Defendants' phone records; and defending the deposition of Plaintiff Castro and assisting with the defense of the deposition of Plaintiff Marmolejo."  Smith Decl., ¶ 44, Ex. 43 ¶ 10.

31.     Although Defendants have shown that the amount in controversy, absent consideration of attorneys' fees, surpasses the jurisdictional threshold, this Court can include the potential attorneys' fees in evaluating the amount in controversy.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).  Defendants deny that any such attorneys' fees are owed to Plaintiffs or putative class members, and further reserve the right to contest the application of the 25% benchmark in this case.  For purposes of this jurisdictional analysis *only*, however, Defendants rely on Plaintiffs' allegations that the attorneys' fees are owed.  *See id.*; *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), *overruled on other grounds by Knowles*, 133 S. Ct. 1345 (2013).

32.     Under Ninth Circuit precedent, 25% of the common fund is generally used as a benchmark for an award of attorney fees.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, No. 07CV938–IEG–JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (citation omitted); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012).  Here, Defendants have established that the total amount in controversy is at least $17,041,423.12, and Plaintiffs have not indicated that they will seek less than 25% of a common fund in attorneys' fees.  SAC, Prayer for

Relief ¶ h (seeking attorneys' fees).  Using a 25% benchmark figure for attorneys' fees for Plaintiffs' allegations regarding business expenditures under section 2802 results in estimated attorney's fees of approximately $4.2 million, calculated as follows:

| Total Amount in Controversy from Section 2802 Claim: | $17,041,423.12 |
|---|---|
| Attorneys' Fees Benchmark: | 25% |
| Attorneys' Fees in Controversy: | $4,260,355.75 |

### E. Plaintiffs Cannot Avoid Removal Under CAFA By Stipulating to Limit the Amount of Damages They Will Seek on Behalf of Putative Absent Class Members

33.     Plaintiffs' allegations regarding business expenditures for an alleged violation of California Labor Code section 2802 places at least $17,041,423.12 million in controversy.  Plaintiffs' request for attorneys' fees places an additional $4,260,355.75 million in controversy.  In total, Plaintiffs' cause of action under section 2802, including attorneys' fees, places at least **$21,301,778.87** in controversy.

34.     In the face of this showing, Plaintiffs' allegation that the aggregate total of the claims "is less than $5,000,000" is irrelevant.  SAC ¶ 29; *see* 28 U.S.C § 1332(d)(6); *Knowles*, 133 S. Ct. at 1348-49; *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 976 (9th Cir. 2013).  Under 28 U.S.C. § 1332(d)(6), it is the sum total of each class member's claim that controls, not the aggregate damages limitation asserted by the named plaintiff.  28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").  The Supreme Court has held that even a plaintiff's written stipulation that she will not seek more than $5 million for a putative class cannot defeat federal jurisdiction under the Class Action Fairness Act.  *Knowles*, 133 S. Ct. at 1348-49.  Here, Plaintiffs simply assert that damages are "in an amount that exceeds $25,000, but is less than $5,000,000, the precise amount of which will be proven at trial."  SAC ¶ 29.  This Court must disregard this assertion and instead aggregate the claims of the individual class members as required by the Class Action Fairness Act.  *Knowles*, 133 S. Ct. at 1350 (citing 28 U.S.C. § 1332(d)(6)); *see also Rodriguez*, 728 F.3d at 976.  As Defendants have demonstrated above, the actual amount in controversy exceeds $21 million, and in any case greatly exceeds $5 million.

35. Because Defendants have shown that federal jurisdiction has been established over this action, Plaintiffs bear the burden of proof to prove that an exception to CAFA removal applies and justifies remand. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007). Plaintiffs cannot meet this burden as no exceptions apply to this action. Further, Plaintiffs have never contended that any exceptions to removal under CAFA apply in any prior motions to remand. *See* Smith Decl. ¶ 65. Defendants expressly reserve their right to contest and further brief the applicability of any exception to removal under CAFA that Plaintiffs may identify in any motion for remand.

## THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

36. Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

   a) This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

   b) The action involves a putative class of more than 100 cleaners;

   c) The amount in controversy exceeds $5 million, exclusive of interest and costs as required by Section 1332(d)(2); and

   d) The minimal diversity requirement is satisfied because Plaintiffs and the putative class members are citizens of a state different from Defendants ABM Onsite Services – West, Inc., ABM Services, Inc., ABM Janitorial Services – Northern California, Inc. and ABM Janitorial Services – Southwest, which are all now known as ABM Industry Groups, LLC.

Accordingly, this action is properly removable under 28 U.S.C. § 1441.

37. The United States District Court for the Northern District of California, Oakland Division is one of the federal judicial districts in which the Alameda County Superior Court sits. This action was originally filed in Alameda County Superior Court, rendering venue in this federal judicial district and division proper. 28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a).

38. True and correct copies of all process, pleadings and orders served upon Defendants are attached as Exhibits 1-59 to the Smith Declaration filed concurrently herewith. This constitutes the complete record of all records and proceedings in the state court.

39. Upon filing the Notice of Removal, Defendants will furnish written notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the Alameda County Superior Court, pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendants hereby respectfully remove this action from the Superior Court of California in and for the County of Alameda to this United States District Court.

Dated: May 25, 2017

THEODORE J. BOUTROUS JR.
THEANE EVANGELIS
KATHERINE V.A. SMITH
BRADLEY J. HAMBURGER
GIBSON, DUNN & CRUTCHER LLP

By: */s/ Katherine V.A. Smith*
Katherine V.A. Smith

Attorneys for Defendants ABM ONSITE SERVICES – WEST, INC. (now known as ABM INDUSTRY GROUPS, LLC); ABM SERVICES, INC. (now known as ABM INDUSTRY GROUPS, LLC); ABM JANITORIAL SERVICES – NORTHERN CALIFORNIA, INC. (now known as ABM INDUSTRY GROUPS, LLC); and ABM JANITORIAL SERVICES – SOUTHWEST (now known as ABM INDUSTRY GROUPS, LLC)