UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**MARLEY CASTRO, ET AL.**,

Plaintiffs,

v.

**ABM INDUSTRIES, INC., ET AL.**,

Defendants.

Case No. 17-cv-3026-YGR

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**

Re: Dkt. No. 24

This putative class action generally stems from allegations that defendants required their janitorial employees with the employee master job description "Cleaner" (the "Putative Class Members") to use personal cell phones for work-related purposes without reimbursement, in violation of California Labor Code section 2802 and California Business and Professions Code section 17200, *et seq*. Now before the Court is plaintiffs' motion to remand this case for a third time, pursuant to 28 U.S.C. Section 1447(c). (Dkt. No. 24.) Defendants ABM Industries, Inc., *et al.* (collectively "ABM") have removed this putative class action to this Court twice before, and each time the Court has remanded the case to state court. *See Castro v. ABM Indus. Inc.*, No. 14-cv-05359-YGR, 2015 WL 1520666 ("*Castro I*"); *Castro v. ABM Indus., Inc.*, No.15-cv-01947-YGR, 2015 WL 6954894 ("*Castro II*"). Having carefully considered the pleadings and the papers submitted on this motion and for the reasons set forth below, the motion to remand is **DENIED**.[1]

**I. PROCEDURAL BACKGROUND**

Plaintiffs initially filed a putative class action against defendants in the Superior Court of the State of California, County of Alameda, on October 24, 2014. *See Castro I*, Dkt. No. 1. On December 5, 2014, defendants removed the action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Plaintiffs then moved to remand on February 24, 2015. This Court found

---

[1] Plaintiffs also request that the Court order ABM to pay plaintiffs' attorney's fees. In light of the Court's ruling, plaintiffs' request for attorney's fees is **DENIED**.

1  that defendants had failed to establish that the aggregate amount in controversy exceeded
2  $5 million under CAFA,[2] and remanded to state court. *Castro I* at *4-5.

3   In response, defendants appealed the *Castro I* remand order and filed a notice of removal
4  in *Castro II*. Because a new notice of removal had been filed, the Ninth Circuit denied the appeal
5  as moot. *See Castro v. ABM Indus. Inc.*, 616 F. App'x 353 (9th Cir. 2015). Meanwhile, in a
6  separate matter, the Ninth Circuit held that PAGA penalties asserted as non-class claims cannot be
7  added to amounts recoverable as class claims to reach the $5 million amount-in-controversy
8  threshold in CAFA cases. *See Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1062 (9th Cir. 2015).
9  As in *Yocupicio*, plaintiffs specifically disclaimed seeking class action status for PAGA claims.
10 *Castro II,* Dkt. No. 3-1 ¶ 24; *Yocupicio*, 795 F.3d at 1060 n.7.

11  In *Castro II*, plaintiffs filed a motion to remand light of *Yocupicio*. *Castro II,* Dkt. No. 31.
12 In opposition thereto, defendants argued that *Yocupicio* "was wrongly decided" and noted their
13 intention to "petition for rehearing *en banc* in the Ninth Circuit and/or [file] a petition for a writ of
14 certiorari in the U.S. Supreme Court challenging *Yocupicio*'s holding." *Castro II*, Dkt. No. 32 at
15 1-2, 9. This Court found that *Yocupicio* was directly applicable and binding authority and granted
16 plaintiffs' motion to remand. *Castro II,* 2015 WL 6954894 at * 1-2. Defendants again sought
17 permission to appeal, which was denied by a two-judge motions panel in an unpublished order on
18 Feb. 24, 2016. Defendants then filed a petition for writ of certiorari seeking review by the United
19 States Supreme Court, which was denied on October 3, 2016.

20  On April 28, 2017, Plaintiffs filed a motion for class certification in Alameda County
21 Superior Court and filed a second amended complaint ("SAC") on May 15, 2017. On May 25,
22 2017, ABM removed this case for a third time. (Dkt. No. 1.)

23 **II. LEGAL FRAMEWORK**

24     **A. Removal Jurisdiction**

25     A defendant may remove a civil action filed in state court if the action could have

---

[2] In so finding, the Court rejected defendants' argument that penalties available under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code sections 2698 *et seq.*, should be considered in determining the amount in controversy.

2

originally been filed in federal court. *See* 28 U.S.C. § 1441. A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). The removal statutes are generally construed restrictively, so as to limit removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). Typically a "strong presumption" exists against finding removal jurisdiction. *Gaus v. Miles Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal. *Ibarra v. Manheim Inv.*, 775 F.3d 1193, 1199 (9th Cir. 2015); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013). Doubts as to removability are generally resolved in favor of remanding the case to state court. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

### B. The Class Action Fairness Act ("CAFA")

CAFA provides that district courts have original jurisdiction over any class action in which: (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5). The amount-in-controversy requirement excludes only "interest and costs," so awardable attorney's fees are included in the calculation. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).

"[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006); *see also Ibarra*, 775 F.3d at 1197. In the CAFA context, the applicable burden of proof is by a preponderance of the evidence. *See Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013). "Conclusory allegations as to the amount in controversy are insufficient." *Matheson*, 319 F.3d at 1090-91. However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

1   The Ninth Circuit has held that a removing defendant need only show "'that the potential damages could exceed the jurisdictional amount.'" *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (*per curiam*) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)). The presentation of "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations" is sufficient. *Ibarra*, 775 F.3d at 1197. Once "the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 914 (10th Cir. 2016) (Gorsuch, J.) (citing *Lewis*, 627 F.3d at 400); *see also Rea*, 742 F.3d at 1238 (finding that defendant met its burden where there "was substantial plausible evidence that damages at issue exceeded $5,000,000").

When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.,* 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008); *see also Rippee v. Boston Market Corp.,* 408 F.Supp.2d 982, 986 (S.D. Cal. 2005). In order to determine whether the removing party has met its burden, a court may consider the contents of the removal petition and "summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

**III.  DISCUSSION**

Plaintiffs' motion for remand is based on two grounds, namely, (a) defendants' removal was not timely, and, in any event (b) defendants cannot satisfy their burden as the $5 million amount-in-controversy requirement.[3]

---

[3] Plaintiffs concede the other CAFA elements, namely that (i) at least one plaintiff class member is a citizen of a state different from at least one defendant; (ii) defendants are not states, state officials, or other government entities; and (iii) the number of plaintiffs in the class is at least one hundred. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5).

4

### A. Timeliness of Removal

Generally a case must be removed within "30 days after the receipt by the defendant . . . of a copy of the initial pleading." 28 U.S.C. § 1446. A subsequent removal "petition is permitted only upon a 'relevant change of circumstances'—that is, 'when subsequent pleadings or events reveal a *new* and *different* ground for removal.'" *Reyes v. Dollar Tree Stores, Inc.,* 781 F.3d 1185, 1188 (9th Cir. 2015) (quoting *Kirkbride v. Cont'l Cas. Co.,* 933 F.2d 729, 732 (9th Cir.1991)). The Ninth Circuit has held that a sufficient "change in circumstances bearing on jurisdiction" exists where the "amount in controversy" has been expanded. *Id.* Here, such a "change in circumstances" occurred on April 28, 2017, when plaintiffs filed their motion for class certification, trial plan, and expert declaration in state court. (Dkt. No. 1, Declaration of Katherine V.A. Smith ("Smith Decl.") ¶ 40, Ex. 39; ¶ 45, Ex. 44.) Specifically, plaintiffs' trial plan indicates that each class member "will be owed damages equal to the minimum available cost of a cell phone in California during the month that the violation occurred." (*Id.* ¶ 45, Ex. 44 at 6.)

The Court understands that this is the first time plaintiffs have represented an intent to seek the full reimbursement cost of the minimum available cost of a cell phone in California. In fact, plaintiffs previously took that position that a 20% reimbursement rate for cell phone expenses was speculative and unsupported by the evidence in this case. *See Castro I*, Dkt. No. 25 at 5 (describing defendants' assumption of a 20% reimbursement rate as a "wholly unsupported estimate" and "speculative and self-serving"). Plaintiffs' class certification motion attaches the declaration of plaintiffs' accounting expert which states that the lowest available monthly cost of a cell phone during the class period was $27.14. (Dkt. No. 5-3, Declaration of David M. Breshears ("Breshears Decl.") ¶ 20.) Based therein, defendants calculate the amount-in-controversy as exceeding $5 million, and possibly even exceeding $20 million depending on certain assumptions which the Court discusses below. Plaintiffs' class certification motion, trial plan, and expert declaration thus constitute a "motion . . . or other paper from which it may be first ascertained that the case . . . has become removable." 28 U.S.C. § 1446(b)(3); *see also Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1184 (9th Cir. 2015). Accordingly, the Court finds defendants' motion timely.

5

Plaintiffs rely on *Gyorke-Takatri v. Nestle USA, Inc.*, 2016 WL 5514756 (N.D. Cal. 2016) to claim the damages position referenced above does not constitute a relevant change of circumstances. *Gyorke-Takatri* is distinguishable. There, defendants sought to remove a putative food mislabeling class action under CAFA. *Id*. at * 3. Defendants' calculations assumed that damages were equal to the "retail price California consumers paid" for defendants' products. *Id.* The district court remanded because it found that defendants "failed to offer admissible evidence demonstrating that [the] case satisfie[d] CAFA's amount in controversy requirement." *Id.* Plaintiffs then moved for class certification in state court and proposed to measure damages either by "the price [consumers] paid for Gerber products" or the price retailers paid for the same. *Id*. Defendants removed for a second time, arguing that plaintiffs' "new statement of restitution/damages" constituted a relevant change in circumstances. *Id.* The district court disagreed and remanded largely because it found that plaintiffs' proposed measure of damages yielded damages "equal to or less than the damages [defendants] presumed plaintiffs were seeking in the first removal." *Id.* at *3. By contrast, the measure of damages which plaintiffs propose here is not "equal to or less than the amount [ABM] previously presumed Plaintiffs were seeking." *Id*. Rather, plaintiffs' current position represents a departure from their previous stance. This departure enlarges the amount in controversy by 500% which constitutes a "relevant change of circumstances." *Reyes,* 781 F.3d at1188.

**B.     Amount-In-Controversy Calculation**

**1.     Evidence Offered and Calculations by ABM**

In support of removal jurisdiction, ABM offers the declaration of plaintiffs' accounting expert, David Breshears CPA/CFF, who states that the lowest available monthly cost of a cell phone during the class period was $27.14. (Breshears Decl. ¶ 20.) Next, defendants point to the declaration of Nedy Warren, ABM's Vice President of Human Resources, which indicates that ABM's records reflect that there are at least 29,413 Punitive Class Members.[4] (Dkt. No. 1,

---

[4] Plaintiffs argue that the Court should reject ABM's count of the number of Punitive Class members because on October 28, 2016, defendants produced a class list in discovery which indicated that there were 15,477 Punitive Class Members. According to plaintiffs, ABM "subsequently informed Plaintiffs that the October 2016 Class List has inadvertently omitted a

6

Declaration of Nedy Warren ("Warren Decl.") ¶ 8.) Warren further states that these Punitive Class Members worked approximately 627,908 months during the class period. (*Id.* ¶ 9.) Based on these figures, defendants calculate the amount in controversy as approximately $17,041,423 independent of attorney's fees.[5] Defendants further calculate that plaintiffs' request for attorney's fees places an additional 25% in controversy, increasing the figure to $21,301,779. *See Jasso v. Money Mart Express, Inc.*, 2012 WL 699465 (N.D. Cal. 2012), at *7 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

### 2. Assumptions Underlying ABM's Calculations

Defendants' calculations rely on an important and contested assumption, namely that each Punitive Class Member incurred at least one reimbursable cell phone expense for each month worked during the class period. This assumption is reasonable for three reasons. First, it is more conservative than the assumption made by this Court in denying ABM's first petition for removal. *See Castro I,* 2015 WL 1520666 at *4-5 (calculating the amount-in-controversy based on *two* reimbursable cell phone expenses per month).

Second, the SAC indicates that ABM "regularly" requires plaintiffs "to use their personal cell phones in discharging their duties." (SAC ¶ 23.) Plaintiffs further allege that ABM "regularly call[s] or text message[s] Plaintiffs and Class Members with work-related communications and require[s] that Plaintiff and Class Members respond." (*Id.*) In addition, plaintiffs aver that ABM "regularly require[s] that Plaintiffs and Class Members who work at locations without time clock

---

large number of [Punitive Class Members], and produced a revised list on May 31, 2017" which showed at least 29,413 Punitive Class Members. The Court finds that it is appropriate for defendants to rely on the May 31, 2017 class list indicating 29,413 Punitive Class Members because (i) plaintiffs do not dispute the accuracy of this class list, (ii) plaintiffs have not shown that they were prejudiced by defendants' production of the initial class list, and (iii) ABM promptly produced the revised class list after learning that the initial class list "inadvertently omitted putative class members who were terminated prior to 2014." (Dkt. No. 26, Declaration of Katherine V.A. Smith in Support of Defendants' Opposition to Plaintiffs' Motion to Remand ¶ 2, Ex. A.) In any event, for the reasons discussed below, the amount-in-controversy exceeds $5 million even if the Court were to use the 15,477 Punitive Class Member figure from the initial class list.

[5] ($27.14 minimum monthly cell phone cost per month) * (627,908 months worked by Punitive Class Members) = $17,041,423.12 amount in controversy.

systems use their personal cell phones to clock in and out of their shifts, breaks, and meal periods." (*Id.* ¶ 25.) The SAC also states that ABM engages in "common" practices and policies which were "centrally devised and commonly applied." (*Id.* ¶¶ 5, 22.) Such allegations support a conservative assumption that plaintiffs incurred at least one reimbursable cell phone expense for each month worked.[6]

Third, the deposition testimony of the named plaintiffs is consistent with defendants' assumption of one reimbursable expense per month. For example, Lucia Marmolejo testified that a supervisor would call her "once a month, sometimes . . . twice a month" to schedule Marmolejo for different shifts when the supervisor needed Marmolejo to cover for another employee. (Dkt. 4, Declaration of Hunter Pyle in Support of Plaintiffs' Motion for Class Certification, Ex. D, Deposition of Lucia Marmolejo at 84:7-85:10.) Marmolejo also testified that she clocked in and out with her personal cell phone on each shift worked and believed that this "was the way we had to do it." (*Id.* at 98:18-23.) Similarly, Marley Castro testified that she was required to clock in and clock out with her personal cell phone for lunch breaks. (*Id.*, Ex. E, Deposition of Marley Castro at 97:12–17, 112:7–20, 117:18–21.) Thus, the Court finds defendants' assumption reasonable. Accordingly, the amount-in-controversy of $21,301,778.87 exceeds CAFA's threshold.

Plaintiffs argue that defendants erroneously assume a 100% violate rate which is not supported by the SAC or evidence in this case. According to plaintiffs, courts decline to find a 100% violation rate absent allegations of a uniform policy or scheme which are lacking here. *See Dobbs v. Wood Group PSN, Inc.*, 201 F. Supp. 3d 1184, 1189 (E.D. Cal. 2016); *Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1119 (C.D. Cal. 2016); *Vilitchai v. Ametek Programmable Power, Inc.*, 2017 WL 875595, at *3 (S.D. Cal. 2017). Plaintiffs do not persuade, as they mischaracterize defendants' arguments and the meaning of a "100% violation rate." The Ninth

---

[6] As noted above, when considering similar allegations in *Castro I* this Court found such allegations sufficient to support a reasonable assumption of "semi-monthly" violations (*i.e.* two violations per month) but insufficient to satisfy the amount in controversy requirement. (*See Castro I,* 2015 WL 1520666 at *4-5.) This Court's finding that removal was improper in *Castro I* was driven primarily by an assumed 20% reimbursement rate. By contrast, the measure of damages which plaintiffs propose here provides for a 100% reimbursement rate which quintuples the amount in controversy and renders removal proper.

8

Circuit has noted that a "100% violation rate calculation [] assum[es] that violations occurred in every identified shift for each class member." *Ibarra*, 775 F.3d at 1199 n.3. Here, defendants assume one violation per month worked, not one violation for "every identified shift for each class member." *Id.*[7]

Further, plaintiffs' reliance on *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906 (N.D. Cal. 2016), is misplaced. There, the court found that defendant's "assumption that each putative class member missed one meal break and one rest period per workweek [was] reasonable" because plaintiff alleged that he "'regularly' missed meal breaks and that defendants maintained a 'policy or practice' of both meal and rest break violations." *Id.* at 911–12. Similarly, plaintiffs here allege that defendants "regularly require" plaintiffs to use their personal cell phones in discharging their duties and that ABM engages in "common practices, policies, and/or schemes" which "have systematically failed to reimburse employees for out-of-pocket expenses for work-related use of their personal cell phones." (SAC ¶¶ 22-23.)

Finally, *Morris v. LiquidAgents Health Care, LLC*, 2012 WL 5451163 (N.D. Cal. 2012), is distinguishable. There, defendants assumed that each punitive class member accrued twelve overtime hours per week for every week worked, despite the fact that defendants' evidence "supported a contrary inference," namely that "employees' schedules 'varied greatly'" and "many class members did not have this much overtime." *Id.* at *5. By contrast, defendants here make a reasonable assumption of one reimbursable cell phone expense per month, which is supported by plaintiffs' allegations in the SAC and evidence in this case including the named plaintiffs' deposition testimonies. *See Section III.B.2, supra*.[8] Accordingly, the motion to remand is **DENIED**.[9]

---

[7] Similarly, *Jasso* does not help plaintiffs. There, the court held that "one violation per week on each claimed basis [was] a sensible reading of the alleged amount in controversy" in light of "the allegations of a 'uniform policy and scheme.'" *Jasso*, 2012 WL 699465, at *5. The mere fact that plaintiffs here do not allege a "uniform" policy does not render unreasonable defendant's assumption of one violation per month.

[8] Plaintiffs also argue that defendant "cannot assume any particular frequency as a basis for its jurisdiction calculations," and fail to proffer any evidence that class members worked approximately 20 days per month. *See Morris*, 2012 WL 5451163, at *4. Again, *Morris* is distinguishable. In *Morris*, this Court's holding was based in large part on the fact that plaintiffs

9

## IV. CONCLUSION

Having carefully considered the papers submitted, the Court **DENIES** the motion and hereby sets the following schedule based on the discussions at the case management conference held on September 11, 2017:

| | |
|---|---|
| Filing of Motion for Class Certification | October 27, 2017 |
| Defendants' Opposition to Plaintiffs' Motion for Class Certification | November 28, 2017 |
| Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification | December 13, 2017 |
| Hearing on Plaintiffs' Motion for Class Certification | January 16, 2017 |

This Order terminates Dkt. No. 24.

**It Is So Ordered.**

Dated: October 19, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

had not made any allegations as to "the frequency of the alleged violations." *Id*. By contrast, plaintiffs here assert that violations occurred "regularly" and "systematically" as part of "common practice, policies, and/or schemes." (SAC ¶¶ 22-23, 25.)

[9] Even if that Court were to calculate the amount-in-controversy based on the initial class list and exclude attorneys' fees, the figure would still surpass $5 million. ($27.14 minimum monthly cell phone cost per month) * (398,196 months worked by Punitive Class Members) = $10,807,039.44 amount-in controversy.