UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARLEY CASTRO, ET AL.**, Plaintiffs, v. **ABM INDUSTRIES, INC., ET AL.**, Defendants. | Case No. 17-cv-3026-YGR  **ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AS MODIFIED BY THE COURT**  Dkt. Nos. 30, 31, 34 |

Plaintiffs Marley Castro and Lucia Marmolejo bring this putative class action against defendants ABM Industries, Inc., *et al.* ("ABM") alleging that defendants required their janitorial employees with the employee master job description "Cleaner" (the "Putative Class Members") to use personal cell phones for work-related purposes without reimbursement, in violation of California Labor Code Section 2802[1] and California Business and Professions Code section 17200, *et seq.*[2]

---

[1] Section 2802(a) provides that an "employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." Expenses are necessary if they are "reasonable." Cal. Lab. Code Section 2802(c). The California Supreme Court has stated that Section 2802 is designed "to prevent employers from passing their operating expenses on to their employees." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 562 (2007) (citing legislative history).

[2] The parties have also filed administrative motions to seal the names, addresses, and phone numbers of ABM clients and employees. (Dkt. Nos. 30, 34.) The Court finds the request sufficiently justified under the applicable "good cause" standard. Accordingly, the Court **GRANTS** the motion to seal the designated excerpts and documents in question solely for purposes of resolving the instant motion. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006).

Plaintiffs now seek to certify the following class (the "Proposed Class") as a damages class pursuant to Fed. R. Civ. Pro. 23(b)(3):[3]

> All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner during the period beginning four years prior to the filing of the original complaint, October 24, 2014, through the date of notice to the Class Members that a class has been certified in this action [(the "Class Period")].

(Dkt. No. 31, Motion for Class Certification ("Motion") at 10.) Having carefully considered the pleadings, the papers and exhibits submitted, and for the reasons set forth more fully below, plaintiff's motion is **GRANTED** but because it is too broad as proposed, the class definition is **MODIFIED BY THE COURT**. Accordingly, the Court **CERTIFIES** the following three classes:

**(1) EPAY Class**: All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner, **who used a personal cell phone to punch in and out of the EPAY system and who (a) worked at an ABM facility which did not contain biometric clock, and were (b) not offered an ABM-provided cell phone** during the period beginning **on January 1, 2012,** through the date of notice to the Class Members that a class has been certified in this action [(the "**EPAY** Class Period")].

**(2) Suspicious Incidents Class:** All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner **who used a personal cell phone to report unusual or suspicious circumstances to supervisors and were not offered an (a) ABM-provided cell phones or (b) two-way radio** during the period beginning four years prior to the filing of the original complaint, October 24, 2014, through the date of notice to the Class Members that a class has been certified in this action. [(the "**Suspicious Incidents Class** Period")].

**(3) Supervisor Communications Class:** All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner **who used a personal cell phone to respond to communications from supervisors and were not offered an (a) ABM-provided cell phones or (b) two-way radio** during the period beginning four years prior to the filing of the original complaint, October 24, 2014, through the date of notice to the Class Members that a class has been certified in this action. [(the "**Supervisor Communication** Class Period")].

---

[3] In a single footnote, plaintiffs also appear to move for certification of "the common factual and legal issues presented by this Action" pursuant to Rule 23(c)(4). The Court declines to address an argument which plaintiffs have not fully developed. *See Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2013) (stating that arguments "raised only in footnotes . . . are generally deemed waived"). Further, plaintiffs fail to specify the "common factual and legal issues" which plaintiffs contend should be certified under Rule 23(c)(4).

## I. BACKGROUND

Defendants ABM Industries, Inc., ABM Onsite Services, Inc., ABM Janitorial Services – Northern California, Inc., and ABM Janitorial Services, Inc. (collectively "ABM") provide an array of commercial cleaning and janitorial services throughout the United States. Plaintiffs are current and former ABM employees with the Employee Master Job Code Description of "Cleaner." (Dkt. No. 31-1, Declaration of Hunter Pyle ("Pyle Decl."), Ex. O.) Cleaners are managed by "Leads" who, in turn, report to "Supervisors." (*Id.*, Ex. A, Deposition of Nedy Warren ("Warren Dep.") at 56:22-57:1, 61:12-20.)

According to plaintiffs, ABM requires Cleaners to use their personal cell phones to (i) punch in and out of ABM's timekeeping system (the "EPAY" system), (ii) report unusual and suspicious circumstances to Leads and Supervisors (collectively, "Supervisors"), and (iii) respond to communications from the same. Plaintiffs further aver that these requirements arise from ABM's written policies which apply to the Proposed Class as a whole.

With regard to the EPAY system, plaintiffs proffer ABM workplace instructions which require Cleaners to punch in and out using "a biometric time clock or a telephone system." (Pyle Decl., Ex. G.) The record reflects that some ABM facilities did not contain a biometric clock during the Class Period. (*Id.*, Ex. C, Deposition of Roberto Hernandez ("Hernandez Dep.") at 40:6-41:3; Ex. S, Declaration of Marley Castro ("Castro Decl.") ¶ 5; Ex. T, Declaration of Lucia Marmolejo ("Marmolejo Decl.") ¶ 5.) Defendants counter that ABM offered Cleaners several different ways to clock in and out which varied by worksite and changed over time. (Dkt. No. 33, Opposition to Plaintiffs' Motion for Class Certification ("Opposition") at 4.) For example, Cleaners clocked in and out using paper timesheets until the EPAY system was implemented on a rolling basis on January 1, 2012. (*Id.*, Ex. O, Amanda Bates-Chavez Tr. 143:7-144:7.) Defendants also offer the declarations of 142 Putative Class Members[4] who indicate that (i) they did not use personal cell phones to punch in and out of EPAY, and (ii) biometric clocks and (iii)

---
[4] At the hearing held on January 16, 2018, defense counsel was unable to explain how these declarants were identified much less whether they could be considered representative. Further, the Court notes that these declarants represent less than 0.5% of the Proposed Class.

3

ABM-provided cell phones were available to Cleaners during the Class Period. (Dkt. No. 34-1, Declaration of Katherine V.A. Smith ("Smith Decl."), Exs. 28 ¶ 4; 49 ¶ 3; 64 ¶ 2; 99 ¶ 2.)

Turning to the reporting of unusual and suspicious circumstances, ABM's Employee Instructions, Information, and Work Rules (the "Work Rules") state that employees must "immediately" report "unusual or suspicious circumstances such as an unlocked door, shortage of supplies, evidence of break-in or damage or accidental breakage of any [ABM] or customer property." (Pyle Decl., Ex. J, Work Rules at 18; *see also* Warren Dep. at 104:4-25.) ABM's Work Rules also prohibit Cleaners from using customer equipment including "telephones, radios, [and] computers." (*Id*. at 20.) Plaintiffs thus assert that these two Work Rules constitute a requirement for Cleaners to use their personal cell phones to report suspicious incidents immediately to Supervisors. (Warren Dep. at 95:21-96:6; Castro Decl. ¶ 4; Marmolejo Decl. ¶ 4.) However, as proffered by plaintiffs, they do not account for evidence where ABM provided cell phones or two-way radios.

With regard to responding to communications from Supervisors, plaintiffs rely primarily on Work Rule 14 which states that employees must "[o]bey work orders of Supervisors and management" and "[p]erform the work assigned and follow instructions." (Work Rules at 14.) ABM counters that it offers Putative Class members many options for communicating with Supervisors and does not require use of a personal cell phone, including ABM-provided cell phones and two-way radios.

Plaintiff Marmolejo worked at eight ABM client sites during her tenure as a Cleaner from 2009 through 2014. Marmolejo testified that she used her personal cell phone to clock in and out of EPAY. (Pyle Decl., Ex. N, Deposition of Lucia Marmolejo ("Marmolejo Dep.") at 96:24-98:8, 98:18-23, 100:2-101:10, 106:6-8, 110:12-17, 112:9-23, 117:1-3.) Marmolejo also testified that she used her personal cell phone to report suspicious incidents to her Supervisors, and that her Supervisors contacted her regularly on her personal cell phone to assign tasks and request updates on the status of her work. (Marmolejo Decl. ¶¶ 4, 7; Marmolejo Dep. at 83:8-12, 84:7-85:10.)

Plaintiff Castro worked at three ABM client sites during her time as a Cleaner from 2013 to 2015. (Castro Decl. ¶ 3.) Castro testified that she clocked in and out of EPAY using her

4

personal cell phone. (*Id.* ¶ 4; Pyle Decl., Ex. E, Deposition of Marley Castro ("Castro Dep.") at 97:12-17, 112:18-113:12, 114:7-12, 122:19-123:2.) Further, Castro testified that her Supervisors called her regularly on her personal cell phone, and that she used her personal cell phone to report suspicious incidents at worksites. (Castro Decl. at ¶ 7; Castro Dep. at 118:2-14,124:1-128:25, 129:21-130:2.)

## II. LEGAL FRAMEWORK

Under Federal Rule of Civil Procedure 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements as "numerosity, commonality, typicality[,] and adequacy of representation." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

Once the threshold requirements of Rule 23(a) are met, plaintiffs must then show "through evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Here, plaintiffs seek certification under Rule 23(b)(2) and Rule 23(b)(3).

Rule 23(b)(2) requires plaintiffs to establish that the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (citation omitted).

Rule 23(b)(3) requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler*

*Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465 (2013) (quoting *Wal-Mart v. Fukes*, 564 U.S. 338, 351 (2011); *see also Mazza*, 666 F.3d at 588. The Court considers the merits to the extent they overlap with the Rule 23 requirements. *Ellis*, 657 F.3d at 983. The Court must resolve factual disputes as "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id.* (emphasis in original). "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Ellis*, 657 F.3d at 982. "A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule." *Wal-Mart*, 564 U.S. at 350. Ultimately, the Court exercises its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

### III. DISCUSSION

Defendants challenge all elements for certification of a Rule 23(b)(3) class, except for numerosity and adequacy.[5] The Court will first address commonality under Rule 23(a) together

---

[5] Defendants also argue that plaintiffs' proposed damages model precludes class certification under *Comcast*, 133 S.Ct. at 1433. There, the Supreme Court denied class certification partly based on plaintiffs' "arbitrary" damages model. *Id*.

According to ABM, plaintiffs' damages model fails to "measure damages resulting from the particular [Section 2802] injury on which [ABM's] liability in this action is premised. *Id*. at 1439. Specifically, plaintiffs' damages model provides for "damages equal to the minimum available cost of a cell phone in California during the month that the violation occurred." (Dkt. 31-22 at 6.) Defendants take issue with the fact that this model would result in uniform damages regardless of cell phone usage and plan cost.

Defendants do not persuade. In *Comcast*, the Court rejected plaintiffs' damages model because plaintiffs failed to "tie each theory of antitrust impact" to a calculation of damages. *Id*. at 1433. By contrast, here plaintiffs' damages model is specifically tied to plaintiffs' claims under Section 2802 and provides for damages equal to the minimum available cost of a cell phone in California during the month that a violation occurred.

To the extent that defendants take issue with the *quantification* and *allocation* of damages ABM's criticism does not defeat class certification. *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("damage calculations alone cannot defeat certification"); *see also Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). The Ninth Circuit has held that plaintiffs are not required to prove their damages with "exact proof" at the class certification stage. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 970 (9th Cir. 2013); *see*

with predominance under Rule 23(b)(3). *See, e.g., Collins v. ITT Educ. Servs., Inc.*, No. 12-CV-1395, 2013 WL 6925827, at *3 (S.D. Cal. 2013) (addressing commonality and predominance together) (citing *Amchem Prods.*, 521 U.S. at 609 ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.")). The Court will then address the remaining factors under Rules 23(a) and 23(b)(3)—Numerosity, Typicality, Adequacy, and Superiority—in turn.

### A. Commonality and Predominance

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The existence of common questions itself will not satisfy the requirement. Instead, "[w]hat matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. at 350 (citation omitted) (emphasis in original). The predominance inquiry under Rule 23(b)(3) is "far more demanding." *See Amchem Prods.*, 521 U.S. at 623–24.

California law provides three requirements in this context, namely defendants' knowledge of necessary work-related expenses. *See Stuart v. RadioShack Corp.*, 641 F.Supp.2d 901, 903 (N.D. Cal. 2009); *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal.App.4th 220, 230 (2006). Thus, the Court finds that determining whether Putative Class Members are entitled to relief under Cal. Lab. Code Section 2802 ultimately turns on three inquires: First, whether defendants knew that Putative Class Members were using their personal cell phones for work-related purposes. Second, whether Putative Class Members made expenditures or incurred losses as a result of using personal cell phones for work-related purposes. Third, whether it was "necessary under the

---

*also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) ("Uncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages.")

7

circumstances for [Putative Class Members] to use their personal cell phones when discharging their duties." *See Sinohui v. CEC Entertainment, Inc.*, 2016 WL 347521, at *11 (C.D. Cal. 2016).

### 1. Knowledge of Personal Cell Phone Use

The question of whether ABM knew that Cleaners were using personal cell phones for work-related duties can be answered with common evidence as to three categories of activities, namely (i) clocking in and out of EPAY, (ii) reporting suspicious incidents, and (iii) responding to communications from Supervisors. With regard to the first category, each Cleaner who clocked in and out of EPAY using a personal cell phone was required to provide that cell phone number to ABM. (Warren Dep. 149:2–150:5.) Plaintiffs proffer internal ABM emails which indicate that defendants were aware that Cleaners were using personal cell phones to clock in and out. (*Id*. 154:4–155:25, Ex. L.) As to the second and third categories, no dispute exists that ABM's Work Rules required Cleaners to report suspicious incidents and follow instructions. (*See* Work Rules 14 and 20.) ABM does not dispute that these Work Rules were in place. The class definition as proffered is too broad given options available to communicate other than cell phones. However, as narrowed, and with evidence of cell phone calls to or from Supervisors, common sense dictates that Supervisors were aware of them. *See* Section 3.A.3 *infra*. This constitutes a sufficient showing of knowledge as to the second and third categories.

Therefore, the Court finds that the question of whether ABM knew that Cleaners were using personal cell phones can be answered on a classwide basis with common evidence as to each of the three categories of activities described above as modified.

### 2. Expenses Incurred as a Result of Work-Related Duties

The next inquiry is whether a Cleaner made expenditures or incurred losses as a result of work-related duties. Plaintiffs proffer the expert report of David M. Breshears who opines that plaintiffs can determine whether an employee used a personal cell phone to clock in and out of EPAY by comparing ABM's punch records, which reflect the number of each phone used to punch in and out of EPAY, with the list of Putative Class Members' cell phone numbers. (Dkt. No. 31-24, Declaration of David M. Breshears ("Breshears Decl.") ¶¶ 8–11.) Mr. Breshears further opines that plaintiffs can determine whether Cleaners used personal cells phone to report

8

suspicious incidents or communicate with Supervisors by comparing the list of Putative Class Members' cell phone numbers with defendants' phone bill records which show inbound and outbound calls and texts from phones which ABM issued to Supervisors. (*Id.* ¶¶ 12–13.)

Defendants concede that punching in and out of EPAY, reporting suspicious incidents, and communicating with Supervisors are work-related duties. Accordingly, the Court finds that the issue of whether a Cleaner incurred expenses "in direct consequence of the discharge of his or her duties, or of obedience to the directions of the employer" can be answered on a classwide basis with common evidence as to each of the three categories of activities described above.[6] *See* Cal. Lab. Code Section 2802(a).

### 3. Necessity of Expenses Under The Circumstances

The Court finds that the third inquiry, which is whether expenses incurred as a result of work-related duties were "necessary" as opposed to merely optional or voluntary, can be answered through common proof with regard to each of the three categories at issue, namely (i) clocking in and out of EPAY; (ii) reporting suspicious incidents; and (iii) responding to communications from Supervisors. *See Tokoshima v. Pep Boys Manny More & Jack of Cal.*, 2014 WL 1677979, at *10 (N.D. Cal. 2014). The record reflects that plaintiffs intend to proffer distinct evidence to establish ABM's liability under Section 2802 as to each of these three categories. However, as set forth below, the Court finds that plaintiffs' class definition as proffered is overly broad in light of the proffered evidence.

//
//

---

[6] Defendants argue that plaintiffs' claims are not capable of classwide resolution because plaintiffs cannot show on a classwide basis that Putative Class Members personally paid their cell phone bills. Defendants do not persuade in light of *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014), which held that "[i]f an employee is required to make work-related calls on a personal cell phone, then he or she is incurring an expense for purposes of section 2802." *Id.* The *Cochran* court further stated that "[i]t does not matter whether the phone bill is paid for by a third person, or at all." *Id.* The Court notes that several courts in this district have specifically relied on *Cochran*. *See e.g., O'Connor v. Uber Technologies, Inc.*, 311 F.R.D. 547, 567 (N.D. Cal. 2015); *Sinohui*, 2016 WL 3475321, at *10; *Richie v. Blue Shield of California*, 2014 WL 6982943, at *17 (N.D. Cal. 2014).

### i. Punching In and Out of EPAY

Plaintiffs intend to rely primarily on the instructions which ABM distributed to Cleaners after EPAY was implemented on January 1, 2012, to show that use of a personal cell phone to punch in and out of EPAY was "necessary." These instructions state that Cleaners are "required to 'punch in' and 'punch out' at the start and end of your shift and also at the beginning and end of your 30 minute meal period . . . . [using] either use a biometric time clock *or* a telephone system." (Dkt. No 31, Ex. G (emphasis supplied).) The record reflects that these instructions applied to Cleaners on a uniform basis. (Warren Dep. at 141:13-23.) Several district courts in this Circuit have found commonality where plaintiffs challenged employment practices which applied to the proposed class as a whole. *See Richie*, 2014 WL 6982943, at *17; *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 442 (E.D. Cal. 2013) (finding commonality where all class members were "subjected to the same employment policies and practices"); *Hopkins v. Stryker Sales Corp.*, 2012 WL 1715091, at *5 (N.D. Cal. May 14, 2012) (finding commonality based on a uniform company policy).

Defendants criticize plaintiffs' Proposed Class definition on the ground that the record reflects significant variation across Cleaners which defeats commonality and predominance. This criticism has some merit. For example, several Cleaners testified that they "never used [a] personal cell phone" for work-related purposes. (Smith Decl., Ex. 107 ¶¶ 7, 10; *see also* Exs. 21 ¶ 5; 43 ¶ 4; 69 ¶ 2; 128 ¶ 6; 129 ¶ 6; 130 ¶ 10.) Further, some Putative Class Members did not own a personal cell phone during the Class Period, while others did not take their personal cell phones to work. (*Id.*, Exs. 8 ¶¶ 4-5 (did not take personal phone to work); 24 ¶ 7 (same); 105 ¶¶ 1, 7 (did not own personal cell phone); 128 ¶ 11 (same).)[7] Finally, defendants offer the testimony of

---

[7] *Harris v. Vector Marketing Corp.*, 753 F.Supp.2d. 996 (N.D. Cal. 2010), does not help defendant because that case is distinguishable. There, the court denied certification of a class of sales representatives seeking reimbursement for various expenses under Section 2802 partly due to the fact that some putative class members "may have used a cell phone; others may not" in holding that plaintiffs failed to show "that evaluation of [cell phone] expenses incurred in a variety of contexts may be done on a relatively uniform basis." *Id*. Here, by contrast, the EPAY Class is defined so as to include only Cleaners who actually "used a cell phone" in one common "context," namely to punch clock in and out of EPAY. *Id*.

current and former Cleaners who state that they used a variety of different mechanisms to clock in and out which varied by time period, worksite, and personal preference. (Opposition, Declaration of Theane Evangelis ("Evangelis Decl."), Ex. T. Castro May 11, 2017, Deposition at 77:3-13 (ABM-provided cell phone); Smith Decl. Exs. 51 ¶ 3 (same); 64 ¶ 2 (same); 92 at ¶¶ 3-4 (same); 109 ¶¶ 3, 4 (same); Exs. 12 ¶ 3 (biometric clock); 44 ¶ 2 (same); 128 ¶¶ 3-4 (same).)[8]

The Court finds that whether use of a personal cell phone to punch in and out of EPAY was "necessary" can be establish through common evidence, namely ABM's written workplace instructions. However, given the state of the evidence and in light of defendants' criticisms, the Court modifies the Proposed Class definition to exclude Cleaners who (i) worked at facilities which contained a biometric clock, (ii) were offered an ABM-provided cell phone, or (iii) did not use their personal cell phones to clock in and out of EPAY. These modifications should address the noted concerns. Thus, the Court would limit the class to the following:

**(1)    EPAY Class**: All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner, **who used a personal cell phone to punch in and out of the EPAY system and who (a) worked at an ABM facility which did not contain biometric clock, and were (b) not offered an ABM-provided cell phone** during the period beginning **on January 1, 2012,** through the date of notice to the Class Members that a class has been certified in this action [(the "**EPAY** Class Period")].

(Modifications in **bold**.)[9]

ii.    Reporting Suspicious Incidents

To show that use of a personal cell phone for reporting suspicious incidents to Supervisors was "necessary," plaintiffs proffer two ABM company policies, namely Work Rules 18 and 20. These Work Rules require Cleaners to report "unusual or suspicious circumstances such as an unlocked door, shortage of supplies, evidence of break-in or damage or accidental breakage of any [ABM] or customer property" "immediately" but prohibit Cleaners from using customer equipment including "telephones, radios, [and] computers" to do so. (Work Rules at 18, 20.)

---

[8] That said, as previously noted, the Court cannot determine whether the evidence is ultimately representative.

[9] As noted the record reflects that ABM began implementing the EPAY system on January 1, 2012.

11

Whether use of a personal cell phone to report suspicious incidents was "necessary under the circumstances" turns on the interpretation of these Work Rules which can be addressed on a classwide basis. *See Sinohui*, 2016 WL 3475321, at * 11.

Defendants argue that some Putative Class Members reported incidents using ABM-provided cell phones or two-way radios. As noted above, defendants' criticism has some merit. Again, the Court would limit the Class Definition to exclude Cleaners who were offered ABM cell phones or two-way radios but finds that whether use of a personal cell phone to report suspicious incidents was "necessary" can be establish through common evidence.[10] Thus, the Court would limit the class to the following:

**(2) Suspicious Incidents Class:** All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner **who used a personal cell phone to report unusual or suspicious circumstances to supervisors and were not offered an (a) ABM-provided cell phones or (b) two-way radio** during the period beginning four years prior to the filing of the original complaint, October 24, 2014, through the date of notice to the Class Members that a class has been certified in this action. [(the "**Suspicious Incidents Class Period**")].

(Modifications in **bold**.)

### iii. Communicating with Supervisors

To show that use of a personal cell phone to respond to communications from Supervisors was "necessary" plaintiffs proffer an ABM Work Rule which requires Cleaners to "[o]bey work orders of Supervisors" and "[p]erform the work assigned and follow instructions" upon penalty of "disciplinary action, up to and including termination." (Work Rules at 14.) ABM's liability for personal cell phone expenses incurred as a result of communicating with Supervisors similarly will turn on an interpretation of Work Rule 14 which can be addressed on a classwide basis.

Defendants aver that at least some Putative Class Members communicated with Supervisors using ABM-provided cell phones or two-way radios. To address defendants' criticism, the Court would limit the Class Definition to exclude Cleaners who were offered ABM cell phones or two-way radios. Thus:

---

[10] The Court again notes that whether such evidence is ultimately persuasive presents a merits issue.

12

**(3) Supervisor Communications Class:** All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner **who used a personal cell phone to respond to communications from supervisors and were not offered an (a) ABM-provided cell phones or (b) two-way radio** during the period beginning four years prior to the filing of the original complaint, October 24, 2014, through the date of notice to the Class Members that a class has been certified in this action. [(the "**Supervisor Communication** Class Period")].

(Modifications in **bold**.)

### B. Numerosity

Rule 23(a) requires that each proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23. Rather, the rule "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980); *see also Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014); *see, e.g.*, *Patrick v. Marshall*, 460 F. Supp. 23, 29 (N.D. Cal. 1978) (certifying class with at least thirty-nine potential members). A class or subclass with more than 40 members "raises a presumption of impracticability [of joinder] based on numbers alone." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015). In analyzing numerosity "a court may make common-sense assumptions and reasonable inferences." *The Civil Rights Educ. & Enforcement Ctr. V. RLJ Lodging Trust*, 2013 WL 314400, at *6 (N.D. Cal. 2016).

Here, the parties agree that ABM employed more than 30,000 Cleaners in California during the Class Period. Defendants concede that numerosity has been satisfied, and the Court so finds.[11]

---

[11] The Court notes that the three classes certified by this Court may contain fewer than the 30,000-plus Putative Class Members covered by plaintiffs' proffered class definition. However, in light of the tens of thousands of potential class members, presumptive sufficiency of a class of 40 members, and applying "common sense" assumptions and reasonable inferences, the Court finds that plaintiffs have satisfied the numerosity requirement. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004).

### C. Typicality

To satisfy typicality, plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation omitted).

Here, Castro and Marmolejo worked for ABM as Cleaners during the Class Period. Both were subject to the same written company policies as the other Putative Class Members. Castro and Marmolejo testified that they used their personal cell phones to perform work-related duties including (i) clocking in and out of EPAY, (ii) reporting suspicious incidents, and (iii) responding to communications from Supervisors. The Court finds that Castro and Marmolejo therefore have the same general claims as other class members with regard to each of the three classes at issue.

Defendants challenge typicality as to Castro and Marmolejo on the ground that they testified that they used their personal cell phones for work-related purposes the "entire time" they worked for ABM. (Castro Decl. ¶¶ 4, 7; Marmolejo Decl. ¶¶ 4, 7.) By contrast, other Cleaners testified that they rarely or never used their personal cell phones for work-related purposes. (*See* Smith Decl., Ex. 130 ¶ 10.) Defendants do not persuade, as the record indicates that Castro and Marmolejo (i) held the same job, and (ii) allege the same ABM conduct and (iii) financial injury as other class members. *See Wolin*, 617 F.3d at 1175 (quoting *Hanon*, 976 F.2d at 508. Therefore, the Court finds that plaintiffs have satisfied the typicality requirement as to Castro and Marmolejo.

### D. Adequacy

Rule 23(a)'s adequacy requirement considers "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if] the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003).

14

Plaintiffs have made a sufficient showing for purposes of Rule 23(a) that Castro, Marmolejo, and plaintiffs' counsel are adequate representatives. Specifically, the record before the Court indicates that plaintiffs Castro and Marmolejo have been active participants in the litigation. Additionally, plaintiffs' counsel, Hunter Pyle Law and Feinberg, Jackson, Worthman & Wasow, have experience litigating class action claims in both federal and state courts, and appear to have been prosecuting this action vigorously.

Defendants concede that adequacy is satisfied, and the Court so finds.

### E. Superiority

Lastly, the Court may certify a class under Rule 23(b)(3) only upon a finding that a class action is superior to individual suits. To make this determination, the Court considers the following four non-exhaustive factors: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1235 (9th Cir. 1996).

"[W]here monetary damages that each Class Member suffered individually are relatively modest, certifying a class action is favored." *Barbosa*, 297 F.R.D. 431 at 442. Given the amount of damages at stake here for each individual class member, it is likely that "litigation costs would dwarf potential recovery" so that individual suits would "not make economic sense for litigants or lawyers." *See Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 467 (N.D. Cal. 2012) (citing *Hanlon*, 150 F.3d at 1023. Here, Mr. Breshears calculated the minimum cost a class member could incur on a personal cell phone as approximately $28 per month. (Breshears Decl. ¶¶ 15-22.) Thus, under plaintiffs' theory of liability, a class member could recover a maximum of approximately $2,352 if the class member had been employed as a Cleaner since beginning of the Class Period and continues to work as a Cleaner. The Court finds this potential maximum recovery "relatively

1  modest," *Barbosa*, 297 F.R.D. 431 at 442, and that the "litigation costs would dwarf potential

2  recovery." *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 467 (N.D. Cal. 2012). Further, the Court

3  notes that current employees may be reluctant to file individual lawsuits for fear of retaliation. *See*

4  *Schulz v. Qualxserv, LLC*, 2012 WL 1439066, at *9 (S.D. Cal. 2012) (citing *Campbell v.*

5  *PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 605 (E.D. Cal. 2008) ("class members may fear

6  reprisal in pursuing individual claims against their employer")).

7  Defendants argue that a class action is not superior due to the difficulties in managing the class action. Specifically, defendants assert that plaintiffs cannot show whether class members actually incurred expenses, or whether their personal cell phone use was necessary rather than merely convenient. The Court finds that defendants' argument is more aptly addressed as a challenge to commonality and predominance, and fails for the reasons discussed above. *See* Section III.A, *supra*. Accordingly, plaintiffs have satisfied the superiority requirement.

**IV.  CONCLUSION**

For the foregoing reasons, plaintiffs' motion for class certification under Rule 23(b)(3) is **GRANTED** as follows with the Court's modification emphasized:

**(1)  EPAY Class**: All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner, **who used a personal cell phone to punch in and out of the EPAY system and who (a) worked at an ABM facility which did not contain biometric clock, and were (b) not offered an ABM-provided cell phone** during the period beginning **on January 1, 2012,** through the date of notice to the Class Members that a class has been certified in this action [(the "**EPAY** Class Period")].

**(2)  Suspicious Incidents Class:** All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner **who used a personal cell phone to report unusual or suspicious circumstances to supervisors and were not offered an (a) ABM-provided cell phones or (b) two-way radio** during the period beginning four years prior to the filing of the original complaint, October 24, 2014, through the date of notice to the Class Members that a class has been certified in this action. [(the "**Suspicious Incidents** Class Period")].

///

///

///

16

**(3)** **Supervisor Communications Class:** All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner **who used a personal cell phone to respond to communications from supervisors and were not offered an (a) ABM-provided cell phones or (b) two-way radio** during the period beginning four years prior to the filing of the original complaint, October 24, 2014, through the date of notice to the Class Members that a class has been certified in this action. [(the "**Supervisor Communication** Class Period")].

This terminates Docket Numbers 30, 31, and 34.

**IT IS SO ORDERED.**

Dated: January 26, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**