UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARLEY CASTRO, ET AL.,**<br>Plaintiffs,<br>v.<br>**ABM INDUSTRIES, INC. ET AL.,**<br>Defendants. | Case No. 17-cv-3026-YGR<br><br>**ORDER DENYING MOTION TO COMPEL AND ALTERNATIVELY MODIFYING CLASS DEFINITION**<br><br>Re: Dkt. No. 58. |

Plaintiffs bring this class action complaint against defendants ABM Industries, Inc. and its wholly owned subsidiaries (collectively, "ABM") under California Labor Code Section 2802 and Labor Code Private Attorneys General Act, Labor Code Section 2698 ("PAGA") for alleged failure to reimburse or indemnify plaintiffs' expenses for use of their personal cell phones for work-related tasks. (Dkt. No. 1-4 ("SAC").) Relevant to the instant motion, defendants claim that a significant number of absent class members signed collective bargaining agreements ("CBAs") containing "Wage and Hour Protocol[s]" with binding individual arbitration provisions ("CBA Plaintiffs"). Defendants' motion seeks to compel CBA Plaintiffs' non-PAGA claims into arbitration. (Dkt. No. 58 ("Motion").)

Having carefully reviewed the pleadings, the papers submitted, and oral arguments from counsel on April 24, 2018, and for the reasons set forth more fully below, the Court **DENIES** ABM's Motion as framed but **MODIFIES AND LIMITS** the definition of the class to exclude all such claims arising after the operative date(s) of the agreements.

**I. BACKGROUND**

The background giving rise to this action is well-known and the Court will not repeat it here. Relevant to the current motion, defendants have produced three separate CBAs which they contend are impacted by the Court's January 26, 2018 Order Granting Class Certification (Dkt. No. 49), namely: (i) the San Diego and Imperial Counties Maintenance Contractors Agreement by and between ABM Industry Groups, LLC and SEIU United Service Workers West, CTW of San Diego California, effective June 1, 2016 (Dkt. No. 58-3 ("San Diego CBA")); (ii) the Los Angeles/Orange County Maintenance Contractors Agreement by and between ABM Industry Groups, LLC and SEIU United Service Workers West, effective May 1, 2016 (Dkt. No. 58-4 ("Los Angeles CBA")); and (iii) the Northern California Maintenance Contractors Agreement by and between ABM Industry Groups, LLC and the SEIU United Service Workers West, effective May 1, 2016 (Dkt. No. 58-5 ("Northern California CBA")).

Each of the agreements contains a "Wage and Hour Protocol," which provides, in relevant part, as follows:

> Parties to this Agreement, including individual bargaining-unit employees and/or a group/class of bargaining-unit employees, agree to resolve on an individual basis solely and exclusively through the binding mediation and arbitration process set forth in this Protocol any and all claims alleging violations of any wage and hour laws . . . including but not limited to claims . . . alleging a violation of . . . the California Labor Code . . . .

(San Diego CBA at 58-62; Los Angeles CBA at 92-93; *see* Northern California CBA at 125.)[1] Each of the CBAs also identifies the "system of binding mediation and arbitration" contained therein as "the sole and exclusive method of resolving all Covered Claims,[2] whenever they arise." (San Diego CBA at 59; Los Angeles CBA at 93; and Northern California CBA at 126.) Finally, the CBAs contain a waiver provision through which the parties "agree[] to waive[] to the maximum extent permitted by law the right to jury trial and to bench trial, and the right to bring,

---

[1] Plaintiffs do not allege that the Wage and Hour Protocols across these three CBAs differ in any meaningful way. (SAC at 2-3.) Thus, the Court will refer to the CBAs collectively unless otherwise specified.

[2] The CBAs define "Covered Claims" as including but not limited to claims alleging a violation of the California Labor Code.

2

maintain, or participate in any class, collective, representative, or private attorney general action, including but not limited to any actions under [PAGA], or any other similar laws, where in arbitration or otherwise, to the full extent permitted by applicable law . . . ." (San Diego CBA at 58; Los Angeles CBA at 93; Northern California CBA at 125-26.)

ABM produced the CBAs to plaintiffs' counsel on February 20 and 28, 2018, following the Court's January 26, 2018 class certification order.[3] (Dkt. No. 59-1 ¶ 2.) During oral argument, defendants estimated that the CBAs apply to one-third of the class members.[4] Further, the Court is advised that on April 16, 2018 the referenced unions filed a grievance under the Wage and Hour Protocols of the CBAs and incorporated the SAC therein by reference. (Dkt. No. 67-1.)

**II.  DISCUSSION**

A. Motion to Compel Arbitration

As a preliminary matter, the parties do not dispute generally either the applicability or the enforceability of the arbitration provisions in each of the CBAs. Rather, plaintiffs argue that given the timing of the motion, defendants have waived their right to enforce the arbitration provisions in this action, and that, alternatively, the provisions should not be given retroactive effect. The Court addresses each.

By way of background, the Federal Arbitration Act ("FAA") allows a party to request that a district court compel arbitration and stay judicial proceedings. 9 U.S.C. §§ 3, 4. Typically, the court's role is limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th

---

[3] Prior to this production, in its Answer to plaintiffs' SAC, dated May 24, 2017, ABM generically referred to "the terms of applicable collective bargaining agreements" as barring the claims of "Plaintiffs' and/or putative class members." (Dkt. No. 6-8 ¶ 19; *see also* Dkt. No. 6-8 ¶¶ 48-50.) ABM did not refer to the CBAs in its response to plaintiffs' motion for class certification. (Dkt. No. 33.)

[4] ABM's estimate likely includes those class members who were subject to the CBAs regardless of whether the illegal conduct alleged occurred prior to or after the CBAs' effective date.

3

Cir. 2004). However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474 (1989). The FAA provides that arbitration agreements are unenforceable where there are "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening federal law." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 574, 582 (1960). Thus, when evaluating the enforceability of arbitration agreements, courts should generally refer to the applicable state law principles governing for formation of contracts. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

The Court first considers whether defendants have waived their right to arbitrate. Under California law, a court may consider:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay had affected, misled, or prejudiced the opposing party.

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008) (*quoting St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196 (2003)).

In evaluating these factors, the Court considers primarily that ABM did not notify plaintiffs of their intent to compel arbitration until nearly two years after the CBAs became effective and three years after the initiation of this litigation. (Dkt. No. 59-1 ¶ 2; Dkt. No. 1-3 ¶ 60; *see also* Opposition at 6.) Consequently, both parties have substantially invoked the litigation machinery and have made considerable progress in filing and prosecuting the lawsuit and in conducting discovery. (S*ee* Dkt. No. 59-1¶ 2; *see also* Dkt. Nos. 28, 49; Opposition at 6; Dkt. No. 3-7.)

In response, ABM argues that until the class was certified, the issue was not ripe as the relevant CBAs did not apply to the named plaintiffs.

While in some circumstances, defendants' delay may be cause to deny the motion in its entirety, granting the motion here would merely reduce the size of the class, not derail the litigation in its entirety.[5] More specifically in that regard, ABM represented in its third attempt to remove this case to federal court, that at least 29,413 individuals fell within plaintiffs' proposed class definition. (Dkt. No. 1 ¶ 12.) Similarly, both parties agreed that the putative class contained more than 30,000 members in briefing for class certification. (Dkt. No. 49 at 13.) A reduction in class size to approximately 20,000 would have no impact on plaintiffs' ability to maintain numerosity under Fed. R. Civ. Proc. 23(a)(1). *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004) (finding that a common sense approach to numerosity is reasonable); *see also Californians for Disability Rights, Inc. v. Cal Dep't of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008). Further, in this context, all the parties' litigation actions would have had to occur in any event. Therefore, the granting of ABM's motion would not prejudice plaintiffs. Accordingly, the Court finds that ABM has not waived its right to arbitrated claims brought by the CBA Plaintiffs.

Having not found a waiver, the Court now turns to whether the provisions apply retroactively, that is, to claims the basis of which occurred *prior* to the effective date of the CBAs. Some courts have retroactively applies arbitration agreements where the language of the agreement could *not* be read to include a temporal limitation, while others have declined to find retroactive effect where the language of the agreement was not retroactive on its face. The Ninth Circuit has not spoken directly on this issue.[6] *Compare Jones v. Deja Vu, Inc.*, 419 F.Supp.2d

---

[5] Prejudice could exist if a defendant strategically postured the filing to serve as an alternative tactic to derail an action only after an adverse court ruling on class certification. A motion to compel arbitration can be raised prior to class certification. *See*, *e.g.*, *Congdon v. Uber Techs.*, 16-cv-02499-YGR, Dkt. Nos. 50, 65; *Morvant et al v. P.F. Chang's China Bistro, Inc. et al.*, 11-cv-05405-YGR, Dkt. Nos. 40, 64.

[6] *See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) (finding that when an arbitration clause that "does not contain any temporal limitation, the relevant inquiry is whether . . . [the] claims relate to any obligation or claimed

5

1146, 1150 (N.D. Cal. 2005) ("Where an arbitration provision does not contain a temporal limitation, the parties may be compelled to arbitrate despite the fact that the challenged conduct predates the signing of the agreement") *with Morse v. ServiceMaster Glob. Holdings Inc.*, 2012 WL 4755035, at *5 (N.D. Cal. Oct. 4, 2012) (denying defendant's motion to compel arbitration of claims that predate the execution of the arbitration agreement "[b]ecause the arbitration language is not retroactive on its face").

Here, the operative language of the CBAs require "binding mediation and arbitration" to resolve "all Covered Claims, *whenever they arise*." (San Diego CBA at 59; Los Angeles CBA at 93; and Northern California CBA at 126 (emphasis supplied).) Courts have found that the choice of the word "arise" suggests that the clauses govern present or future conduct, not past conduct. *See Morse*, 2012 WL 4755035, at *5 ("The use of the present participle 'arising' makes it clear that it applies to claims that may arise going forward, not claims that have already accrued."); *see also Russell v. Citigroup*, 748 F.3d 677, 679 (6th Cir. 2014) ("The use of the present-tense 'arise,' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggest[s] that the contract governs only disputes that begin – that arise—in the present or future. The present tense usually does not refer to the past.").

ABM argues that the CBAs do not contain any temporal limitation. (Motion at 8.) ABM asserts that the phrase "whenever they arise" suggests that the arbitration provisions in the CBAs "apply to claims regardless of when those claims accrued, including claims based on conduct occurring before the effective date of the CBAs." (*Id.*) In support of their argument, ABM points to several cases finding in favor of retroactivity for arbitration agreements that contained the words "arise" or "arising." However, in each of these cases the arbitration clauses at issue use "arise" or "arising" to describe the substance of covered claims, not the timing (or temporal indication) of the claim.[7]

---

obligation under the . . . Agreement, not when they arose.").

[7] ABM cited to four cases to support their position that "whenever they arise" should be interpreted as allowing an arbitration provision to apply retroactively:

1. *In re Verisign, Inc. Derivative Litigation*, 531 F.Supp.2d 1173, 1223-24 (N.D. Cal

6

Here, the Court finds that the phrase "whenever they arise" points to the timing of covered claims rather than the subject-matter. In the context of a phrase describing the timing, rather than the substance, of covered claims, the CBAs' use of the present tense "arise" suggests that the clauses govern present and future, but not past, conduct. *See Morse*, 2012 WL 4755035, at *5; *see also Russell*, 748 F.3d at 679. Thus, ABM's authorities to the contrary are inapposite.

Accordingly, the Court finds that the arbitration clause found in the CBAs applies only to those claims brought by CBA Plaintiffs *after* the effective date of the relevant CBA.

B. Restructuring of the Class

Under Rule 23, an order granting class certification may be altered or amended prior to final judgment. *See* Fed. R. Civ. Proc. 23(c)(1). *See also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation For such an order, particularly during the period before any notice is sent to members of the class, 'is inherently tentative.'")

In light of the unions' own affirmative actions to begin arbitration and given that notice has

---

2007) (finding that an agreement to arbitrate "[a]ny dispute or claim arising out of or relating to the engagement letter between the parties, the services provided thereunder, or any other service provided by or on behalf of KPMG" applied to claims that predated the arbitration agreement).

2. *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F. 3d 1195, 1201-02 (10th Cir. 2016) (finding that an agreement to arbitrate "any and all claims or disputes between us . . . that arise out of or in any way relate to: (1) this Agreement; (2) services that Cox provided to you in connection with this Agreement; (3) products that Cox makes available to you; (4) bills that Cox sends to you or amounts that Cox charges you for services or goods provided under this Agreement; and (5) any services or goods that Cox or any of its affiliated entities provide to you under any other agreement . . . " applied to disputes the basis of which predate the agreement).

3. *Trujillo v. Gomez*, 2015 WL 1757870, at *8 (S.D. Cal. Apr. 12, 2015) (finding that an arbitration clause covering "[a]ny claim or controversy arising out of or relating to this Agreement, the Corporation, or the rights or obligations of the Shareholders" applied retroactively).

4. *Carlisle v. CitiMortgage, Inc.*, 2007 WL 1557411, at *3 (E.D. Mo. May 25, 2007) (finding that an agreement to arbitrate "all employment disputes based on legally protected rights . . . that may arise between an employee or former employee and [CitiMortgage]" applied to an employment-related dispute that predated the agreement).

7

not yet been sent to the class members, the Court finds that the most appropriate remedy to address the instant motion is to modify the class definition to exclude those claims brought by CBA Plaintiffs the underlying facts of which occurred after the effective date of the relevant CBA. *See Gen. Tel. Co. of Sw.*, 457 U.S. at 160 (finding that a judge is free to modify a class certification order even after the order is entered); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (finding that under Rule 23(c)(2), each class member shall receive the best notice practicable under the circumstances).

Accordingly, the Court restructures the three classes certified by the Court on January 26, 2018 as follows and noted in bold:

> (1) EPAY Class: All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner, who used a personal cell phone to punch in and out of the EPAY system and who (a) worked at an ABM facility which did not contain biometric clock, and were (b) not offered an ABM-provided cell phone during the period beginning on January 1, 2012, through the date of notice to the Class Members that a class has been certified in this action [(the "EPAY Class Period")].
>
> (2) Suspicious Incidents Class: All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner who used a personal cell phone to report unusual or suspicious circumstances to supervisors and were not offered an (a) ABM-provided cell phones or (b) two-way radio during the period beginning four years prior to the filing of the original complaint, October 24, 2014, through the date of notice to the Class Members that a class has been certified in this action. [(the "Suspicious Incidents Class Period")].
>
> (3) Supervisor Communications Class: All employees who were, are, or will be employed by ABM in the State of California with the Employee Master Job Code Description code Cleaner who used a personal cell phone to respond to communications from supervisors and were not offered an (a) ABM-provided cell phones or (b) two-way radio during the period beginning four years prior to the filing of the original complaint, October 24, 2014, through the date of notice to the Class Members that a class has been certified in this action. [(the "Supervisor Communication Class Period")].
>
> **The EPAY Class, the Suspicious Incidents Class, and the Supervisor Communications Class, shall each exclude claims brought by those Cleaners who are subject to a collective bargaining agreement ("CBA") which contains an operative arbitration clause for all claims arising after the effective date of the relevant CBA.**

In light of the Court's Order, ABM's request to stay all proceedings as to the CBA Plaintiffs pending the completion of arbitration (*see* Dkt. No. 58) is **DENIED AS MOOT**.

8

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** ABM's motion to compel as framed and **MODIFIES AND LIMITS** the class definition to exclude all claims properly subject to arbitration.

This Order terminates Docket Number 58.

**IT IS SO ORDERED.**

Dated: May 14, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**